UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH FLOWERS, #297460,                    Case No. 08-10607

              Plaintiff,                    District Judge Gerald E. Rosen

v.                                          Magistrate Judge R. Steven Whalen

LINDA METRISH, *et al.*,

              Defendants.

_____ /

**REPORT AND RECOMMENDATION**

Before the Court is *Defendants' Motion for Summary Judgment* [Docket #19], filed by Defendants Ball, Cunningham, Cushman, Kaupp, Metrish, and Sizer, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

For the reasons set forth below, I recommend the following:

1.  That the Motion for Summary Judgment [Docket #19] be GRANTED as to Defendant Metrish, dismissing her WITHOUT PREJUDICE based on Plaintiff's failure to exhaust his administrative remedies.

2. That the Motion be GRANTED as to Defendants Ball, Cunningham, Kaupp, and Sizer, dismissing constitutional and Title II ADA claims WITH PREJUDICE.

3.  That the Motion be GRANTED as to Defendant Cushman, dismissing Title II ADA claims WITH PREJUDICE.

# I.   FACTUAL BACKGROUND

Plaintiff, a Michigan Department of Corrections ("MDOC") inmate formerly housed at the Kinross Correctional Facility ("KCF"), filed a *pro se* complaint on February 12, 2008, alleging violations of his Eighth and Fourteenth Amendment rights pursuant 42 U.S.C. §1983 and Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12132 *et seq.*

## 1.   Allegations Contained in the Exhausted Grievances

Plaintiff alleges that on May 18, 2007, he filed a grievance (KCF-2007-05-788-12z) against KCF medical staff members Sizer, Kaupp, Ball, and Cunningham, claiming that these Defendants refused to replace his stolen hearing aids. *Complaint, Docket #1-1,* pg. 10, 15 of 30. The grievance, omitting mention of when the hearing aids were stolen or when Plaintiff first requested their replacement, alleges that as a result of his inability to hear, he experienced mental anguish, violating his rights pursuant to 42 U.S.C. § 1983 and the ADA. *Id.* at 15-16.

On July 22, 2007, Plaintiff filed another grievance (KCF-2007-06-883-23z) alleging that he was denied the use of a Telecommunication Device for the Deaf ("TDD") by Defendant Cushman, a KCF Assistant Resident Unit Supervisor ("ARUM"). *Id.* at 18. Plaintiff also filed a grievance on August 29, 2007 (KCF-2007-08-1105-27a) protesting his move from a single-man cell to a six-man cell.[1]  *Id.* at 42.

---

[1]The Step III response and Defendants' Brief refers to this grievance as KCF-2007-08-1105-22d. *Defendants' Brief* at 2. It was originally submitted as KCF-2007-08-1105-27a.

### 2.  Unexhausted Claims

Plaintiff, acknowledging that the remaining claims have not been exhausted, attributes his failure to exhaust his administrative remedies to his placement on "Modified Grievance Access" on August 31, 2007.  *Id.* at 25-26 of 50.  On July 16, 2007, Plaintiff grieved a non-defendant ARUS for responding to his request for a transfer by directing him to write a kite.  *Id.* at 27 of 50.  On August 15, 2007,  Plaintiff complained that in a recent major misconduct hearing, he was not provided with a sign-language interpreter, later filing a separate grievance disputing the substance of the major misconduct charge.  *Id.* at 29,  38, of 50.  The same month, Plaintiff complained that he was prevented from taking his television to his segregation cell and that during the move, staff misplaced a number of his personal items.  *Id.* at 32, 34 of 50.  On August 22, 2007, Plaintiff complained that although on July 31, 2007 he had been approved for a transfer to a facility with accommodations for the hearing-impaired inmates, he continued to be housed in KCF's segregation unit.  *Id.* at 36, 41 of 50.  On August 30, 2007, Plaintiff  complained that staff mishandled his "legal mail." *Id.* at 43 of 50.   Plaintiff was transferred on September 10, 2007.

## II.  STANDARD OF REVIEW

### A.    28 U.S.C. §1997e(a)

A dismissal for failure of a prisoner to exhaust administrative remedies under 42 U.S.C. §1997e(a) is a dismissal without prejudice. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  In *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007), the Supreme Court suggested, in dicta, that failure to exhaust might be a basis for dismissal

under Rule 12(b)(6).  However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted.  *See also Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (concluding that failure to state a claim as used in § 1997e(c) and § 1915(g) does not include failure to exhaust administrative remedies).

Nevertheless, whether categorized as a 12(b)(6) motion or otherwise, the underlying question in this motion is whether the Defendants have carried their burden of showing that the Plaintiff failed to exhaust his administrative remedies.  If they have, then the unexhausted claims must be dismissed without prejudice.

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90, 126 S.Ct. at 2385.  Thus,

whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock, supra*, 549 U.S. at 921, 127 S.Ct. at 216. Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id*.; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008). *Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

### B.  Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. 2552.

### III.  ANALYSIS

#### A.  Unexhausted Claims

Plaintiff's "unexhausted" claims are divided in two groups. The first group consists of grievances that were processed through Step III of MDOC's grievance procedure but are subject to dismissal because of Plaintiff's failure to include any or all of present Defendants when filing the original grievance. The second group of claims involve grievances that were

not pursued through Step III.

### 1.  Claims Processed Through Step III

Policy Directive 03.02.130(R) requires that at Step I, MDOC inmates list "the names of all those involved in the issue being grieved are to be included."  Plaintiff's failure to include various Defendants at Step of I of the grievances requires dismissal of a number of his claims.

First, Grievance Identifier KCF-2007-05-788-12z alleges that medical staff members Sizer, Kaupp, Ball, and Cunningham  refused to replace his stolen hearing aids.  *Complaint, Docket #1-1,* pg. 10, 15 of 30.  The Step I grievance does not mention Defendant Metrish (KCF's warden) either by name or title, but at Step II alleges that "[t]he warden" is responsible for ADA violations.  *Id.* at 16 of 50.  Likewise, Grievance Identifier KCF-2007-06-883-23z, alleging that Plaintiff was denied the use of a TDD by Defendant Cushman, does not mention Defendant Metrish at Step I, but alleges at Step II that she "commit[] misconduct in office" for failing to transfer him to a facility for the hearing-impaired.  "[E]xhaustion is not per se inadequate [under the PLRA] simply because an individual later sued was not named in the grievances." *Okoro v. Hemingway,* 481 F.3d 873, 874 (6th Cir.2007) ( *citing Jones v. Bock, supra,* S.Ct. at 921, 923-25, 166). However, if such a requirement is written into the prison's administrative procedures, compliance is mandatory if a defendant is to be considered exhausted. *Jones v. Bock, supra; Woodford v. Ngo, supra.* "'Because current MDOC policy states that the "[d]ates, times, places and names of all those involved in the

-7-

issue being grieved are to be included,'" neither KCF-2007-05-788-12z nor KCF-2007-06-883-23z shows exhaustion of the claims against Metrish. *Laster v. Pramstaller*, 2008 WL 474146, *4 (E.D.Mich.2008)(Battani, J., adopting the Report and Recommendation of Whalen, M.J.)(*citing* MDOC Policy Directive 03.02.130).

Second, while Plaintiff also fully exhausted the grievance protesting his move from a single-man cell to a six-man cell, the grievance does not name *any* of the present Defendants. *Complaint, Docket #1-1* at pg. 42 of 50, Grievance Identifier KCF-2007-08-1105-27a. As such, the allegations regarding cell overcrowding as well as claims against Metrish must be dismissed without prejudice. *Bock, supra,* 549 U.S. at 219-220, 127 S. Ct. 910-911. "A prisoner's failure to comply with the PLRA's exhaustion requirement deprives a district court of the ability to address the merits of his claims." *Johnson v. County of Wayne,* 2008 WL 4279359, *3 (E.D.Mich. 2008)(Steeh, J.)(*citing Jones v. Bock,* 549 U.S. 199, 219-220, 127 S.Ct. 910, 918-19, 166 L.Ed.2d 798 (2007)); *see also Horn v. Bay County Sheriff's Dept.,* 2008 WL 3285808, *8 (E.D.Mich.,2008)("Where there is a failure to exhaust, the court will not reach the merits of the complaint; rather, the complaint will be dismissed without prejudice").

## 2. Grievances not Pursued Through Step III

As discussed above, Plaintiff, attributes his failure to exhaust a number of grievances to his placement on "Modified Grievance Access" on August 31, 2007, arguing in effect that administrative remedies were unavailable. *Plaintiff's Response, Docket #21* at 1; *Complaint,*

*Docket #1-1,* at 6, 25-26 of 50.   Plaintiff's argument is unavailing.   All of the Step I grievances from the unexhausted complaints were filed before the August 31, 2007 "Modified" restriction was imposed.   The Court also notes that Plaintiff was able to file (and eventually exhaust) his "six-man cell" grievance (KCF-2007-08-1105-27a) just two days before he was placed on modified status.

Accordingly, all of the above unexhausted claims must be dismissed without prejudice.

### B.   Eighth Amendment Claims Against Sizer, Kaupp, Ball, and Cunningham

Defendants argue for the dismissal of claims that Defendants Sizer, Kaupp, Ball, and Cunningham refused to replace Plaintiff's hearing aids.   *Defendants' Brief* at 5.   They contend that these claims, contained in Grievance Identifier KCF-2007-05-788-12z, do not rise to the level of a constitutional violation.   *Id.*

Under the Eighth Amendment, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 290-291, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived

-9-

facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a  prescribed plan of treatment, or a delay in medical treatment.  *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).  However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976).  *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

Plaintiff's claims against Defendants Sizer, Kaupp, Ball, and Cunningham, taken as true, do not rise to the level of an Eighth Amendment violation.  The Complaint states that Plaintiff requested the replacement of stolen hearing aids from all four Defendants, alleging that "seeking the aid of these named RN[]s was like running into a brick[]wall," and also claiming that Defendants' failure to replace his hearing aids caused him "mental anguish." *Complaint, Docket #1-1* at pg. 10 of 50, ¶1; *Id.* at 15 of 50.

Assuming that Plaintiff's claim that his ability to function was compromised by hearing difficulties is "sufficiently serious" the meet the first prong of *Farmer, see Clarkson v. Coughlin,* 898 F.Supp. 1019, 1043 (S.D.N.Y. 1995), he cannot show under the subjective

-10-

component that Defendants were deliberately indifferent to his medical needs.  First, Plaintiff

has not disputed Defendant Cunningham's statement that a July 2007 auditory evaluation

showed that the hearing impairment was not responsive to hearing aids.  *Docket #19*, Exhibit

H at ¶3.  Obviously, the denial of non-efficacious treatment does not amount to an Eighth

Amendment violation.

Second, the "hearing aid" claim fails even if construed to allege more broadly  that

Defendants failed to address his auditory limitations.  For starters, Defendant Cunningham's

affidavit indicates that Corrective Medical Services ("CMS"), rather than present Defendants

were responsible for the denial of the replacement hearing aids requested by Plaintiff. *Docket*

*#19*, Exhibit H.  Further, evidence shows that KCF medical staff was anything but

deliberately indifferent to Plaintiff's limitations as a result of his hearing impairment.

Cunningham, the Health Unit Manager at KCF, states that on April 30, 2007, medical staff

"submitted a request to have [Plaintiff] evaluated for replacement of his hearing aids . . . to

[CMS]."  *Docket #19*, Exhibit H at ¶3.  Cunningham states further that following  CMS's

June 13, 2007 denial of the request, an MDOC Regional Medical Officer "gave approval for

Kinross Correctional Facility Health Care to replace the hearing aids at their own cost." *Id.*

Plaintiff was examined by an audiologist on July 10, 2007.  *Id.*   On July 31, 2007, the

audiologist recommended that because "hearing aids would not help [Plaintiff]," he "should

be transferred to a facility for the hearing impaired."  *Id.*   Cunningham also states that she

responded to Plaintiff's July 25, 2007 kite by assuring him that the audiologist was currently

evaluating his condition.  *Id.* at ¶4.  Finally, Cunningham states that in response to Plaintiff's

August 23, 2007 kite, she informed him that pending a transfer to a facility better equipped to address his impairment, he would remain in segregation for his physical safety. *Id.* at ¶5. While as noted above, Plaintiff's May 18, 2007 grievance alleges that he ran into "a brick wall" when requesting help from Defendants, KCF medical staff had in fact submitted a request for the hearing aid replacements 18 days earlier. Because Plaintiff cannot show that Sizer, Kaupp, Ball, or Cunningham were deliberately indifferent to his condition, charges against these Defendants should be dismissed.[2]

### C. Fourteenth Amendment and ADA Equal Protection Claims Against Cushman

#### 1. Fourteenth Amendment Equal Protection Claims

Defendants argue next for the dismissal of Plaintiff's equal protection claims regarding the limited availability of the TDD. *Defendants' Brief* at 8. Citing *Tennessee v. Lane*, 541 U.S. 509, 522, 124 S.Ct. 1978, 1988, 158 L.Ed.2d 820 (2004)(Rehnquist, C.J., dissenting), Defendants contend that Cushman's requirement that Plaintiff "give advance notice" before using the TDD "rationally furthers a legitimate state purpose." *Defendants' Brief* at 9.

---

[2]Further, because KCF medical staff ordered replacement hearing aids on April 30 at Plaintiff's request, the delay (as a result of CMS's refusal to replace the hearing aids) "does not amount to a denial of services under Title II of the ADA." *Cox v. Jackson,* 579 F.Supp.2d 831, 851 (E.D.Mich.2008)(Komives, M.J.); *Kiman v. New Hampshire Dep't of Corrections,* 451 F.3d 274, 285 (1st Cir.2006).

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C. Const. Amend. XIV § 1.  "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005);  *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 2297,138 L.Ed.2d 834 (1997).  The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id*.; *Vacco*, at 521 U.S. at 799, 117 S.Ct. at 2297.  However, in order for the court to apply strict scrutiny, the plaintiff must "allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification" or was "intentionally discriminated against because of his membership in a particular class, not merely that he was treated unfairly as an individual."  *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999).

Plaintiff premises the disparate treatment claim on his hearing impairment.[3] "Although protected by statutory enactments such as the Americans with Disabilities Act, the disabled do not constitute a 'suspect class' for purposes of equal protection analysis."*Hansen v. Rimel* 104 F.3d 189, 190 (8th Cir. 1997); *Cleburne v. Cleburne Living*

---

[3]Plaintiff states that although he believes that other black prisoners at KCF, like himself, received unequal treatment, "he brings no suit into court concerning this matter." *Plaintiff's Response, Docket #21* at 3.

*Ctr., Inc.,* 473 U.S. 432, 442, 105 S.Ct. 3249, 3255-56, 87 L.Ed.2d 313 (1985). Thus, Plaintiff must establish that requiring him to provide advance notice to staff before accessing the TDD "lack[s] a rational relationship to a legitimate governmental purpose." *Tennessee v. Lane,* 541 U.S. 509, 522, 124 S.Ct. 1978, 1988, 158 L.Ed.2d 820 (2004); *see also Hadix v. Johnson,* 230 F.3d 840, 843 (6th Cir. 2000). "Under rational basis review, a plaintiff faces a severe burden and must 'negate all possible rational justifications for the distinction.'" *Midkiff v. Adams County Regional Water District,* 409 F.3d 758, 770 (6th Cir. 2005)(*citing Gean v. Hattaway,* 330 F.3d 758, 771 (6th Cir.2003)).

Plaintiff's grievance was apparently precipitated by Defendant Cushman's refusal to allow him the use of the TDD on June 19, 2007. *Complaint, Docket #1-1* at pg. 19 of 50 (Grievance Identifier KCF-2007-06-883-23z). Defendant Cushman's affidavit provides multiple reasons for the June 19, 2007 denial as well as KCF's requirement that Plaintiff give advance notice before using the TDD. *Docket #19,* Exhibit I. Cushman states that at the time Plaintiff attempted to access the TDD, "KCF was initiating the Prison Rape Elimination Act program," requiring participation by "[a]ll inmates and certain staff." *Id.,* Exhibt I at ¶3. Cushman states further that "[p]rior to June 19, 2007, [she] had informed [Plaintiff] that advance notice would be required to use the TDD," adding that "[t]he TDD needed to be set up in [her] office, and for security reasons, inmates could not be left unsupervised there." *Id.,* Exhibit I at ¶4. Cushman denies that she ever denied Plaintiff all access to the TDD but instead, "only required that he give advance notice prior to its use." *Id.,* Exhibit I at ¶6.

-14-

Plaintiff's allegations regarding the events of June 19, 2007 and his generalized claim that the requirements set forth for TDD use amounted to a violation of his equal protection rights falter on Defendants' showing that their policy bore a rational basis to a legitimate governmental objective. Although Plaintiff also asserts that he is improperly limited to using the TDD at the staff members' convenience, Defendants note that "[d]ue to the nature of the TDD and its more complicated use[] requiring special training, the TDD could only be used by certain officers. In addition, it had to be set up inside Cushman's office." *Defendants' Brief* at 10. Finally, Defendants also note that "for security reasons, inmates must be monitored when making phone calls." The Plaintiff has failed to negate these rational justifications for the restrictions.

Plaintiff's Step I grievance states that he "would like to be able to[] contact my family like every other inmate here is allowed to[]." *Complaint, Docket #1-1* at pg. 19 of 50 (Grievance Identifier KCF-2007-06-883-23z). However, he does not allege "disparate treatment" from non-impaired prisoners other than the "advanced notice" requirement that is rationally based on technical, security, and staffing concerns. Nor does he claim that he was allotted any less TDD time than the telephone time granted non-hearing-impaired prisoners. In fact, the Step II grievance response indicates that in compliance with MDOC PD 05.03.130(LL), Plaintiff was provided with TDD services "during the same time periods that regular telephone use is permitted. . . . provided that he gives staff advance notice." *Docket #19*, Exhibit D at 2. Moreover, the Step III grievance response, dated October 7, 2007, notes that between the second and third grievance response, Plaintiff had been

-15-

transferred to a facility better able to accommodate his hearing impairment.  *Id.,* Exhibit D at 1.   Because Defendants have provided a rational basis for imposing conditions on Plaintiff's TDD use prior to his transfer, dismissal of the equal protection claim is required.

### 2.  ADA Equal Protection Claims[4]

Plaintiff's Equal Protection claims under Title II of the ADA claims are likewise subject to dismissal.  "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"  *Dillery v. City of Sandusky,* 398 F.3d 562, 567 (6th Cir. 2005); 42 U.S.C. § 12132. "To make out a prima facie case under Title II of the ADA, a plaintiff must establish that '(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.'" *Id.*; *citing Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir.2003).

Even assuming that Plaintiff has stated a claim of ADA discrimination,  dismissal is

---

[4]Because Plaintiff's ADA claims are dismissible on the merits, the Court need not consider whether monetary damages are available.  Defendants argue correctly that Title II of the ADA does not impose individual liability. *Key v. Grayson,* 163 F.Supp. 2d 697, 715-715 (E.D. Mich. 2001)(Gadola, J.).  However, in regard to official capacity claims, *U.S. v. Georgia,* 546 U.S. 151, 159, 126 S.Ct. 877, 882, 163 L.Ed.2d 650 (2006), holds that to the extent that an ADA claim is premised on  conduct that would also violate a claimant's Equal Protection rights under the Fourteenth Amendment, state sovereign immunity is abrogated, allowing the recovery of monetary damages.  *See also id.*, 546 U.S. at 160-63, 126 S. Ct. 882-884 (concurring opinion of Stevens, J.).

-16-

appropriate  because Defendant Cushman's requirement that Plaintiff give advance notice of his intention to use the TDD is "reasonably related to legitimate penological interests." *Gates v. Rowland,* 39 F.3d 1439, 1447 (9th Cir. 1994); *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *See also Tanney v. Boles*, 400 F.Supp.2d 1027, 1042 (E.D.Mich.2005)(Roberts, J.).

*Gates v. Rowland,* noting that "[i]t is highly doubtful that Congress intended a more stringent application of the prisoners' statutory rights created by the [ADA] than it would the prisoners' constitutional rights," holds that "the applicable standard for the review of the Act's statutory rights in a prison setting to be equivalent to the review of constitutional rights in a prison setting, as outlined by the Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)." *Id.,* 39 F.3d at 1447.   Under *Turner,* the reasonableness of Cushman's requirement that Plaintiff inform her beforehand of his intent to use the TDD is assessed with attention to four factors: (1) "whether the restriction bears a 'valid, rational connection' to the 'legitimate governmental interest put forward to justify it,' such that the "asserted goal is not so remote as to render the policy arbitrary or irrational," *Amatel v. Reno,* 156 F.3d 192, 194, 332 U.S.App.D.C. 191, 193 (D.C. Circuit 1998);  *Turner,* 482 U.S. at 89-90, S.Ct. 2262; (2) "whether inmates retain alternative means of exercising the circumscribed right," *id.* at 90, S.Ct. 2262; (3) the court must consider "the costs that accommodating the right imposes on other inmates, guards, and prison resources, *Amatel* at 194"; and (4) whether there are alternatives to the regulation that 'fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.'" *Turner* at 90-91, S. Ct. 2262.

Pursuant to these factors, Defendants have shown that the condition of advance notice for TDD use bears an amply rational connection to a legitimate governmental interest. Moreover, the conditions under which Plaintiff may access the TDD, *i.e.,* "advanced notice" is not onerous. In consideration of the last two *Turner* prongs, Defendants have shown legitimate reasons why allowing less restricted TDD use would significantly tax the prison's staff and training resources.

### D. Immunity

### 1.    Eleventh Amendment Immunity

Assuming that the Complaint can be construed to name Defendants in their *official* capacities, the constitutional claims are subject to dismissal because "[t]he United States Supreme Court has specifically held that a State is not a 'person' against whom a  § 1983 claim for money damages might be asserted." *Price v. Caruso,* 451 F.Supp.2d 889, 902 (E.D.Mich.2006)(Friedman, J.); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 2309-2310, 105 L.Ed.2d 45 (1989).   While Eleventh Amendment immunity "does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law," *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), because Plaintiff was transferred from KCF on September 10, 2007 to a facility better able to accommodate his hearing impairment, "any claim for injunctive relief against the defendants in their official capacities" is moot. *Wilson v.*

-18-

*Yaklich,* 148 F.3d 596, 601 (6th Cir. 1998)(emphasis removed).  For the same reasons, insofar as the Complaint is construed to include a claim against the MDOC, Plaintiff's injunctive claims are also moot.  *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245 (6th 1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

### 2.    Qualified Immunity

Because Plaintiff cannot show a violation of his constitutional  rights, Defendants Sizer, Kaupp, Ball, Cunningham, and Cushman are also entitled to dismissal in their individual capacities on the basis of qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  Of course, in *Pearson v. Callahan*, __ S.Ct. __, 2009 WL 128768 (2009), decided on January 21, 2009, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory.  Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases:

> "On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson* at *9.

> In the present case, the first prong of *Saucier* is clearly met, in that there was no

constitutional violation.  These Defendants are entitled to qualified immunity.

## IV.  CONCLUSION

For these reasons I recommend the following:

1.  That the Motion for Summary Judgment [Docket #19] be GRANTED as to Defendant Metrish, dismissing her WITHOUT PREJUDICE based on Plaintiff's failure to exhaust his administrative remedies.

2. That the Motion be GRANTED as to Defendants Sizer, Kaupp, Ball, and Cunningham, dismissing constitutional and Title II ADA claims WITH PREJUDICE.

3.  That the Motion be GRANTED as to Defendant Cushman, dismissing Title II ADA claims WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  January 28, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 28, 2009.

S/G. Wilson
Judicial Assistant
